CROOKER *v.* HOLLINGSWORTH, et al.

In Banc. May 22, 1950.

No. 37488 (46 So. (2d) 541)

Suggestion of Error Overruled Feb. 5, 1951, (50 So. (2d) 355)

Russell Wright, for appellant.

S. M. Graham and Gilbert & Cameron, for appellees.

Hall, J.

This appeal presents two questions for decision. The first which we consider is whether or not any interest in the land in question was conveyed to Dr. Ruth K. Haley by a deed from E. R. Crooker, Sr., and wife, Mrs. Emma Mae Crooker, dated May 30, 1939, wherein said grantors, for a valuable consideration, purported to convey to said grantee "an undivided one-third interest in and to all my right, title and interest in and to" the lands in controversy. The question arises out of this factual situation: On May 1, 1939, E. R. Crooker, Jr., owned an undivided two-thirds interest in said land, having acquired the same by virtue of an attempted lien given by his father in 1928 in violation of the provisions of a deed from Mrs. Melissa A. Crooker, dated November 2, 1905, hereinafter mentioned, and E. R. Crooker, Sr., owned no interest whatever therein on May 1, 1939. E. R. Crooker, Jr., executed to his father a deed conveying to him said undivided two-thirds interest. This deed is dated May 1, 1939, but the acknowledgment of the grantor therein is dated June 8, 1939. Appellant contends that the deed to Dr. Haley conveyed nothing because on May 30, 1939, E. R. Crooker, Sr., owned no interest in the land, and did not acquire any interest until nine days thereafter,—the date of the acknowledgment in the deed from E. R. Crooker, Jr., to E. R. Crooker, Sr. Appellees contend that the last-mentioned deed was effective as of May 1, 1939, the date thereof, and this contention was adopted by the chancellor.

In 26 C. J. S., Deeds, Sec. 94, p. 346-347, it is said:
 ''While a deed generally takes effect only from the date of its delivery, under some circumstances passage of title may be considered to relate back to a prior date provided no prejudice results to intervening equities.

''As appears supra Sec. 53, it is generally the rule that a deed takes effect from the date of its delivery, not from the time of its execution or record. Under certain circumstances, however, the courts apply the doctrine of relation by which passage of title is considered by a fiction of law to relate back to a prior date, provided no prejudice results to intervening equities. Accordingly, a deed may speak from its date, where such is the intention of the parties, as where they deliberately antedate the deed; but the antedating cannot affect intervening rights.''

 The acknowledgment in the deed from the son to the father in this case recites that he ''acknowledged that he signed and delivered the foregoing instrument on the day and year therein mentioned as his voluntary act and deed.'' While the acknowledgment is dated June 8, 1939, the day and year mentioned in the deed is May 1, 1939, and we are of the opinion that the chancellor was correct in holding that the deed related back to and took effect as of May 1, 1939, so that E. R. Crooker, Sr., became vested with an undivided two-thirds interest as of that date, and that, consequently, his deed to Dr. Haley on May 30, 1939, conveyed an undivided two-ninths interest in the land, being one-third of an undivided two-thirds interest. In this connection it should be noted that there are no intervening rights or equities so far as appellant is concerned. She joined in the deed to Dr. Haley, and now claims to be the owner of the interest therein conveyed pursuant to the last will and testament of E. R. Crooker, Sr., who devised his entire estate to appellant. Unquestionably Dr. Haley thought she was buying something on May 30, 1939, and appellant and her husband either thought that they were selling some-

thing to her or else they deliberately perpetrated a fraud upon her. While we do not in any manner impute fraud to the appellant and her husband, we do adopt the view that they intended to sell something to Dr. Haley. This view comports with equity and good conscience and is in line with the decree of the lower court. It would be grossly inequitable and little short of a legal fraud to uphold the contention of appellant who was one of the grantors in the deed to Dr. Haley.

The other question for decision involves the application of the doctrine of after-acquired title. Mrs. Melissa A. Crooker had three children, viz., E. R. Crooker, Sr., Arthur B. Crooker and Mrs. Hattie M. Hollingsworth. On November 2, 1905, she executed three deeds which are rather lengthy and complicated. It is unnecessary to detail the numerous provisions of these deeds and we mention only those which are here brought into play. She conveyed to E. R. Crooker, Sr., a life estate in an undivided four-sixths interest in the land in question with remainder to his children, and further provided that if he should sell or attempt to sell or incumber the same to any person except his brother or sister, his life estate should immediately cease and the fee-simple title should immediately vest in his child or children. She executed similar deeds to Mrs. Hollingsworth and Arthur B. Crooker for a life estate in an undivided one-sixth interest. These deeds were all delivered to E. R. Crooker, Sr., at or about the time of their execution, and he retained possession of all of them, without recordation, until 1920 when they were recorded after the events next mentioned herein.

On November 26, 1918, Mrs. Melissa A. Crooker, for a valuable consideration, executed to Mrs. Hollingsworth and her husband a deed purporting to convey to them the full fee-simple title to said lands, which deed was recorded on December 5, 1918. Thereafter, on June 6, 1919, E. R. Crooker, Sr., filed a suit to set aside the last-mentioned deed, pleading and exhibiting the three

deeds of November 2, 1905, pleading knowledge thereof by the Hollingsworths, and praying that said three deeds be established. On December 10, 1920, a decree was entered in said suit granting the relief prayed for, and contemporaneously therewith on the same date Mr. and Mrs. Hollingsworth executed to E. R. Crooker, Sr., a quitclaim deed to said land. That is the deed upon which appellant relies as vesting in her the title alleged to have been acquired by Mrs. Hollingsworth about twenty-six years later.

Mrs. Hazel M. Ingram, a daughter of Mrs. Hollingsworth, having acquired in 1946 the interests of all the heirs, save one, of Dr. Ruth K. Haley, deceased, desired to also acquire the interests of the heirs of Arthur B. Crooker who had died several years previously. At Mrs. Ingram's request her father, I. N. Hollingsworth, made a trip to Mobile, Alabama, and after some negotiations and delay finally closed a deal with them whereby they agreed to sell their interests for $1200.00. Mrs. Ingram furnished her father this money, but, since the Arthur Crooker heirs were well acquainted with their aunt, Mrs. Hollingsworth, and were not well acquainted with their cousin, Mrs. Ingram, Mr. Hollingsworth obtained from them a deed, dated November 11, 1946, wherein Mrs. Hollingsworth was named as grantee. It is undisputed that Mrs. Ingram advanced the entire consideration for this deed with the understanding that she was purchasing these interests and that the deed was made to Mrs. Hollingsworth solely for the reason above mentioned, and that it was never intended that Mrs. Hollingsworth should own the interest thus conveyed, but that she would convey the same to Mrs. Ingram, which she did on March 28, 1947.

Appellant contends that by virtue of Mrs. Hollingsworth's quitclaim deed to E. R. Crooker, Sr., in 1920, the title thus acquired in Mrs. Hollingsworth's name in 1946 automatically passed into appellant as the sole beneficiary under the last will and testament of E. R.

Crooker, Sr., under Section 846 of the Mississippi Code of 1942 as interpreted in the case of Meyers v. American Oil Co., 192 Miss. 180, 5 So. (2d) 218, while appellee contends that there are in equity certain exceptions to the general rule, it being pointed out that when he obtained the quitclaim deed in 1920, E. R. Crooker, Sr., well knew the exact status of the entire title to the land, knew that Mrs. Hollingsworth had only a life estate in a one-sixth interest therein, with remainder to her children, and that Arthur B. Crooker likewise had a life estate in a one-sixth interest therein with remainder to his children, and it being further pointed out that under the deed from Arthur B. Crooker's children in 1946 Mrs. Hollingsworth was a mere conduit for passing their title into Mrs. Ingram. The chancellor adopted the position of appellees and, while the matter is not free from difficulty, we have reached the conclusion that his decision was correct.

In 31 C. J. S., Estoppel, Section 21, p. 205, it is said: "Grantee's knowledge. It has been held that a subsequently acquired title will not pass where the grantee knew of the deficiencies in the grantor's title." To the same effect is 21 C. J., p. 1077, Sec. 42.

The after-acquired title doctrine is founded upon the principles of equitable estoppel. The opinion in Meyerkort v. Warrington, Miss., 19 So. (2d) 433, 435, while withdrawn because the case was compromised and settled while a suggestion of error was pending, aptly states two well-recognized rules of equitable estoppel which have some application to the facts here presented: ". . . In the absence of extremely persuasive circumstances, courts will not give effect to an estoppel where the parties are equally well informed as to the essential facts, or where the means of knowledge were equally open to them. 19 Am. Jur., p. 742; 31 C. J. S., Estoppel, Section 71, p. 272, and cases under note 98. . . . And, finally, there is the element essential to an equitable estoppel that the party

who invokes it must have lost something or has been placed at some disadvantage by the conduct of the other party.''

Here it is undisputed that E. R. Crooker, Sr., had full knowledge of the entire status of the title in every detail when he obtained the quitclaim deed from Mrs. Hollingsworth in 1920, for he not only had the deeds in hand which fixed the status of the title, but he had filed a suit wherein he set out at length the deeds whereby the title was fixed and obtained recognition of those deeds on the very day that he secured the quitclaim. Neither he nor the beneficiary under his will was placed at any disadvantage by virtue of the acquisition of the title of Arthur B. Crooker's children in 1946, for it was an outstanding title of which all interested parties were fully aware and which was never intended to be conveyed by the deed from Mrs. Hollingsworth in 1920.

In 31, C. J. S., Estoppel, Section 33, p. 211, it is said: ''Title Acquired for Third Person. Title acquired by a grantor for a third party will not inure to the grantee. ▮▮ The doctrine of estoppel to assert an after-acquired title does not apply where such a title passes to the grantor subject to a resulting trust in favor of a third party who is the actual purchaser, or the conveyance is made to him as a conduit for the purpose of vesting the title in a third person.'' To the same effect is 21 C. J., p. 1085, Sec. 61d.

It is conclusively shown by the record in this case that Mrs. Ingram advanced the money with which to purchase the interests of Arthur B. Crooker's children and with the full purpose and intention that she herself would acquire those interests. It is wholly unreasonable to assume that she would have advanced $1200.00 in cash for the purpose of passing title to those interests over to the appellant. It is further conclusively shown that Mrs. Hollingsworth never sought or intended to acquire those interests for herself, but that she was noth-

ing more than a mere conduit for passing the title into Mrs. Ingram.

We fully recognize that it must be an unusual case on the facts which would authorize a circumvention of Section 846 of the 1942 Code, but we are impressed with the idea, as the chancellor must have been, that this is such an unusual case as to fully justify the decree which was entered in the lower court, and that decree is accordingly affirmed.

Affirmed.

### On Suggestion of Error.

**Lee, J.**

The suggestion of error contends that, in fixing the interests of the parties, the decision and decree of the lower court ignored the reservation of certain water rights, which were contained in the deed from E. R. Crooker, Jr., to E. R. Crooker, Sr., of date of May 1, 1939.

While this point was not specifically made in the original submission, and thus presented a new matter on suggestion of error, the Court did not wish to pass over an alleged obvious error. For that reason, it chose to consider the suggestion as one to modify or correct the decree rather than one of error. To that end, briefs were called for on that point.

After full consideration, it appears that, subsequent to the above-mentioned deed, on May 30, 1939, E. R. Crooker, Sr. and wife executed a deed to Dr. Ruth K. Haley without any reservation of water rights whatever. Thereafter, on January 4, 1946, E. R. Crooker, Jr., by quitclaim, conveyed to Mrs. E. R. Crooker, Sr. without any reservation of water rights whatever. While E. R. Crooker, Jr. reserved these water rights in his conveyance to E. R. Crooker, Sr., thereafter he made no such reservation in his deed to Mrs. E. R. Crooker, Sr. Inasmuch as Mrs. E. R. Crooker, Sr. was one of the grantors in the deed to Dr. Haley, and no reservation

was contained in that conveyance, ▮ ▮ it must be held that her deed effectually conveyed the water rights, which she acquired thereafter by the deed from E. R. Crooker, Jr., insofar as the interest conveyed to Dr. Haley is affected.

The decision of the case was based on a solid foundation, and the pronouncement in the opinion is extended to cover expressly the water rights in question.

There being no reason to modify or correct the final decree, the suggestion of error is, therefore, overruled.

Suggestion of error overruled.