335 So.2d 912 (1976)
Marion BUCHANAN et al.
v.
Charles Ray STINSON et al.
No. 48751.
Supreme Court of Mississippi.
August 3, 1976.
Rehearing Denied August 24, 1976.
Wells, Gerald, Brand, Watters & Cox, A. Jerry Sheldon, Jackson, for appellants.
Joseph M. Stinson, Tylertown, for appellees.
Before PATTERSON, ROBERTSON and BROOM, JJ.
BROOM, Justice, For the Court.
This cloud suit was filed in the Chancery Court of Walthall County by complainants, Buchanan and Malvaney (appellants) against defendants and cross-complainants, Charles Ray Stinson and Marilyn F. Stinson (appellees), as to an undivided 1/7th mineral interest in certain lands situated in said county. The lower court applied the after-acquired title doctrine, and decreed that title to the subject mineral interest was in the appellees and canceled as a cloud on their title the claims asserted by appellants in their original bill. We reverse.
Evidence before the chancellor established these facts. When he died intestate, Shedrah Taylor (the common source of the title asserted by the litigants) owned the surface of the land and one-half of the mineral interest. Shedrah's widow and six children each inherited from him a 1/14th interest in the minerals. Two of his children were John W. Taylor and John Wendell Taylor, who each inherited a 1/14th interest (totaling 1/7th). After Shedrah's *913 death, all of his children except John Wendell Taylor deeded the surface to his widow, Eula Mae Taylor, for her lifetime, with the remainder to one of Shedrah's sons, Hollis, but each grantor in that deed dated August 7, 1958, reserved his mineral interest. On September 3, 1958, Hollis deeded the land to his wife, Geraldine, subject to Eula Mae's life estate. On September 4, 1958, a deed of trust was executed by Hollis, Geraldine, and Eula Mae on the land. This instrument included the 6/7ths surface rights, and 1/7th of the minerals consisting of the undivided 1/14th mineral interests that Eula Mae and Hollis each inherited from Shedrah. At a foreclosure of the deed of trust, appellant Malvaney purchased the property vesting in himself the 1/7th or 2/14ths mineral interest (formerly owned by Eula Mae and Hollis). Later (May 24, 1960), Malvaney purchased the remaining 1/7th surface interest from John Wendell Taylor, who at that time reserved his 1/14th mineral interest. On February 14, 1967, appellant Malvaney by warranty deed conveyed the land to the appellees (Mr. and Mrs. Stinson). No stated exceptions or reservations were in the warranty deed which effectively conveyed all surface rights and only the 1/7th mineral interest which Malvaney had previously acquired.
In 1972 Malvaney was employed by Freedom Oil Company to purchase the mineral interests then owned by Shedrah's heirs. Apparently, Malvaney was employed because his wife was one of the heirs and it was thought that because of that relationship he could deal with the other heirs who were out of state. Malvaney was authorized to pay each heir $25 per acre for leases, or purchase the minerals for $75 per acre. Inexperienced in oil and gas business and without expertise concerning value of leases and minerals, Malvaney stated that he sought advice from appellant Buchanan who advised that the minerals were worth $100 per acre instead of $75. Malvaney then got word to each heir that he had offers to purchase leases at $25 per acre or minerals at $100 per acre. He queried the heirs as to which ones were interested in the offers, and John Wendell Taylor and John W. Taylor responded that they would sell for $100 per acre.
The testimony shows that Buchanan suggested that the deeds from the two Johns (John Wendell and John W. Taylor) be taken in Malvaney's name, after which, by assignment, record title would be perfected in Buchanan. That procedure was followed whereby the aggregate 1/7th mineral interest (1/14th each) of the two Johns purported to vest in Buchanan. Sight drafts were used in the transaction, and Buchanan paid the consideration for the mineral conveyances by arrangements through Deposit Guaranty Bank where he paid the drafts in favor of the two Johns.
Buchanan and Malvaney filed this cloud suit against the appellees (Stinsons) seeking cancellation of any claim of the Stinsons as to the aggregate 1/7th mineral interest which the two Johns caused to vest in Malvaney who transferred to Buchanan.
This appeal presents one paramount question: Is appellant Buchanan not the owner of the 2/14ths or aggregate 1/7th mineral rights sold by the two Johns even though Buchanan furnished from his own funds the entire purchase price paid for the mineral rights, but for business reasons took title in Malvaney's name? The chancellor applied the after-acquired title doctrine together with Mississippi Code Annotated § 89-1-33 (1972), formerly § 843 of our 1942 Code, and dismissed Buchanan's and Malvaney's cloud suit. He sustained the Stinsons' claim by crossbill to the 1/7th mineral interest which the two Johns conveyed to Malvaney who transferred to Buchanan.
Crooker v. Hollingsworth, 210 Miss. 636, 46 So.2d 541 (1950), controls. Crooker pointed out that the after-acquired title doctrine is founded upon premises of equitable estoppel. It holds that the doctrine will not be applied absent extremely persuasive circumstances where the parties are equally well informed "as to essential facts, or where the means of knowledge were equally open to them." (Emphasis added). The opinion in Crooker points out *914 another essential element of equitable estoppel: The party who "invokes it must have lost something or has been placed at some disadvantage by the conduct of the other party." An important aspect of the present case is that when he took title to the subject interest in his name, Malvaney knew that he was not purchasing anything for himself. He testified that he told the two Johns "I was not buying this for my own self." Of additional importance is the fact that when appellee Stinson received the warranty deed from Malvaney in 1967 (approximately five years before the two Johns conveyed their respective 1/14th interests in the minerals into Malvaney's name in 1972), Stinson was aware that he was not acquiring all of the mineral rights. He testified that he knew the former owner, Mr. Harvey, owned one-half of them and that another person "had a small part . . maybe a 7th or a 14th."
As held in Quates v. Griffin, 239 So.2d 803 (Miss. 1970), failure of an intending purchaser to investigate the state of the title is negligence on his part, and equity will not "relieve one who is perfectly acquainted with his rights, or has the means of becoming so, by examining the land records or otherwise." Collier v. King, 251 Miss. 607, 170 So.2d 632 (1965). As stated in 28 Am.Jur.2d Estoppel and Waiver § 80 (1966), one who relies upon an estoppel "must not have been misled through his own want of reasonable care and circumspection ... estoppel is denied where the party claiming it was put on inquiry as to the truth and had available means for ascertaining it." Here it is clear that Stinson, having admitted knowledge that Malvaney owned less than one-half the minerals at the time he deeded the land to Stinson, did not exercise reasonable diligence to learn the truth about the status of the title he purchased from Malvaney. Significant also is the fact that Stinson received all he actually bargained for when he was deeded the property.
The facts show that Malvaney did not intend to gain ownership in himself of the mineral rights of the two Johns, he did not negotiate toward such an end, and did not spend his money for the minerals. Malvaney was only a conduit through which title of John W. Taylor and John Wendell Taylor to the mineral interest passed. Such a passing of title does not inure to the benefit of a prior grantee.
Unavailing is the assertion of appellees Stinsons that the only exception to the after-acquired title doctrine as enunciated in Crooker, supra, is in instances when the original grantee (Stinson here) has full knowledge of the entire status in every detail. However, equitable estoppel will not lie, in the absence of extremely persuasive circumstances, if both parties are equally informed as to the essential facts or where access to such information was equally open to them. Crooker v. Hollingsworth, supra; Meyerkort v. Warrington, 19 So.2d 433 (Miss. 1944), withdrawn on other grounds 198 Miss. 29, 20 So.2d 708 (1945). See also, 28 Am.Jur.2d Estoppel & Waiver, § 80 (1966). Therefore, even if it were admitted here that Mr. and Mrs. Stinson did not have knowledge of the prior mineral reservations of mineral interests by Shedrah Taylor's children, the means of such full knowledge (the land records) were equally as open and available to them as to Malvaney. Their failure to inspect such records was negligence. Craft v. Everett, 237 Miss. 360, 115 So.2d 133 (1959); Roberts v. Bookout, 162 Miss. 676, 139 So. 175, 176 (1932); 28 Am.Jur.2d Estoppel & Waiver § 961 (1966).
According to the proof here, Malvaney contracted with Buchanan to act as his agent in acquiring the mineral rights from the two Johns. Malvaney was not purchasing the minerals for himself, and put up no purchase money. Malvaney used ten day sight drafts prepared by Buchanan which were processed through Deposit Guaranty Bank, and funds of Buchanan were used to pay the drafts. It is clear that when he executed the warranty deed to the Stinsons in 1967, Malvaney acted individually for himself alone. In 1972 when the two Johns conveyed to him the subject mineral rights, Malvaney was no more than a conduit or *915 "straw man" through which the title passed. As written by the late Chief Justice Ethridge in 1945:
If a person as an agent for another executes a deed to lands, and he subsequently acquires in his personal capacity as an individual the title to the land, it is generally held that the after-acquired property doctrine does not apply, because he was acting in two capacities. In other words, the title he acquired as an individual does not flow with the deed he executed as an agent for another. The rule would be similar if he were acting as a trustee for another person and subsequently received title to the land as an individual, but not as a trustee. Ethridge, After-Acquired Property Doctrine and its Application in Mississippi, 17 Miss. L.J. 153, 158 (1945).
To the same effect is 7 Thompson, Real Property § 3207 at 400 (perm.ed.rev.repl. 1962).
In this very close and well tried title suit, our judgment is that the after-acquired title doctrine does not apply. Accordingly, we must reverse and enter a decree here canceling any claim of appellees to the undivided 1/7th mineral interest asserted by appellants.
REVERSED AND RENDERED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and LEE, JJ., concur.