**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2002-CT-02070-SCT**

*JERALD D. McKINLEY*

*v.*

*THE LAMAR BANK, JAMES S. WELCH, JR., AND*
*GEORGE GUNTER*

**ON MOTION FOR REHEARING**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/29/2002 |
| TRIAL JUDGE: | HON. MICHAEL R. EUBANKS |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LAWRENCE E. ABERNATHY, III |
| | JOHN T. KERSH |
| ATTORNEYS FOR APPELLEES: | C. STEPHEN SEALE |
| | AMANDA CLEARMAN WADDELL |
| | S. ROBERT HAMMOND, JR. |
| | MONICA R. MORRISON |
| | RICHARD F. YARBOROUGH, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AS TO GEORGE GUNTER, THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED – 12/01/2005 |
| MOTION FOR REHEARING FILED: | 10/05/2005 |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is granted.  The original opinion is withdrawn, and this

opinion is substituted therefor.

¶2. Claiming, inter alia, that a bank had wrongfully commenced foreclosure proceedings on his property pursuant to a deed of trust which allegedly had previously been satisfied and canceled of record, Jerald D. McKinley commenced a suit for damages against the bank, the original holder of the deed of trust, and the bank's substituted trustee. The trial court granted summary judgment in favor of the defendants and entered a final judgment dismissing McKinley's case with prejudice. Aggrieved by the trial court's dismissal of his case, McKinley appealed, and his case was assigned to the Court of Appeals, which reversed the trial court's judgment and remanded this case for a jury trial. *McKinley v. Lamar Bank*, __ So.2d __, 2004 WL 1662257 (Miss. Ct. App. 2004). Upon a grant of George Gunter's petition for writ of certiorari, we find that the Court of Appeals erred; therefore, as to Gunter, we reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of dismissal entered by the Circuit Court of Lamar County. However, since the Lamar Bank did not file a petition for writ of certiorari, nor join Gunter's cert petition, the Lamar Bank is not properly before us in today's case, and thus the judgment of the Court of Appeals as to the Lamar Bank is final.

### FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶3. The following facts are gleaned from the opinion of the Court of Appeals:

Jerald and Minnie McKinley purchased a home from James S. Welch, Jr. on May 25, 1990. The McKinleys executed a deed of trust and promissory note to Welch to secure financing of the home. The deed of trust secured a $50,000

2

indebtedness and provided for monthly payments in the amount of $482.40. It was recorded in the Forrest County Chancery Clerk's office on May 29, 1990.

On March 17, 1995, Welch recorded a photocopy of the original recorded deed of trust. The photocopy was denoted as a "Corrected Deed of Trust," in which a Bobbie B. Hudson replaced Welch as the beneficiary. On May 23, 1995, Hudson reassigned all of her interest in the deed of trust back to Welch. Additionally, on that same day, Welch assigned all of his interest in the deed of trust to Lamar Bank as collateral for a loan financed by the bank. Both of these assignments were filed in the clerk's office on June 6, 1995. It is noteworthy that the note from the McKinleys to Welch was assigned to Lamar Bank, but the bank never notified the McKinleys of the assignment. Apparently, the McKinleys continued making payments to Welch, with no payments ever being made to Lamar Bank. Further, the bank did not send the notice of foreclosure to the McKinleys.

Gunter testified by deposition that he never talked with Welch prior to initiating foreclosure proceedings. He took Lamar Bank's word that the McKinleys were in default on their promissory note to Welch. Lamar Bank said that Welch told it that the McKinleys were in default.

On July 5, 1996, Welch canceled the recorded deed of trust in which he was listed as the beneficiary. On May 19, 1997, he paid off the loan financed by Lamar Bank and, on the same day, assigned to the bank for a second time all of his interest in the McKinley deed of trust. This second assignment was security for a new loan. This assignment was filed on June 23, 1997.

In March 2001, McKinley defaulted on his promissory note to Welch. As a result, Lamar Bank appointed George Gunter as substitute trustee of the deed of trust and authorized Gunter to initiate foreclosure proceedings on McKinley's property. Apparently, McKinley was not notified of the impending foreclosure proceedings, for according to McKinley, he learned of the foreclosure proceedings from his son who had seen the published notice in the local newspaper.

McKinley filed a Chapter 13 bankruptcy to interrupt the foreclosure proceedings. In response to the bankruptcy filing, Gunter terminated the foreclosure proceedings and took no further action in this regard. McKinley continued to live in the house without making any further payments until the house was destroyed by a fire in November 2001.

*Id.* at \*\*2-3, ¶¶ 3-8 (footnotes omitted).

¶4.    Asserting that the Lamar Bank, James S. Welch, Jr., and George Gunter initiated

foreclosure proceedings against him on a deed of trust which Lamar Bank, Welch and Gunter

knew had been satisfied and canceled of record, Jerald D. McKinley commenced this action

against the Bank, Welch, and Gunter on May 18, 2001.   In his six-count amended complaint

filed on October 9, 2002, pursuant to an agreed court order allowing the amended complaint,

McKinley charged the defendants with (1) extortion, (2) conversion, (3) slander and libel, (4)

gross negligence or willful misconduct, (5) conspiracy, and (6) conduct justifying the award

of punitive damages.    After extensive discovery, McKinley filed a motion for partial summary

judgment, and the Bank and Gunter filed separate motions for summary judgment.    We note

here that the record reveals that Welch failed to appear and defend this action, and Welch

likewise never submitted any sworn testimony via deposition or otherwise.[1]   In his motion for

---

[1]As to Welch, we can ascertain certain facts after a thorough review of the record. At the time of the commencement of the suit on May 18, 2001, a summons was issued for service upon Welch at 155 Beverly Hills Loop, Petal, Mississippi. The record is silent as to a return being filed on this summons. On May 22, 2001, an alias summons was issued for service upon Welch (no address stated).  Again, there is no return on this summons in the record. On June 29, 2001, another alias summons was issued for service upon Welch at P. O. Box 142, Gaulman (sic), Mississippi 39077. Once again, no return on this summons can be found in the record.  However, on August 6, 2001, Welch, through an attorney, filed a separate motion for an additional thirty days to respond to the amended complaint, but "without waiving any of his defenses or objections to the in personam jurisdiction or subject matter jurisdiction of [the] [c]ourt." On August 28, 2001, the same attorney who filed the motion for additional time for Welch, filed a motion to withdraw due to a "conflict" which had arisen between Welch and the attorney. By order entered on September 11, 2001, the trial judge permitted the attorney to withdraw as Welch's attorney of record and the trial judge via the same order granted Welch an additional thirty days to retain an attorney, to file an answer, and to respond to discovery.  This is the last time we hear from Welch, directly or through an attorney. We further note that the record reveals that on April 3, 2002, an agreed order setting a trial date was entered, and while the order was agreed to by the attorneys for McKinley, the Lamar Bank, and Gunter, Welch, nor anyone in his behalf, executed the order. We likewise note that subsequent executed certificates of service by the various attorneys reflect that copies of the designated pleadings were mailed directly to an unrepresented Welch.  In fact, the trial judge, in his

4

partial summary judgment, McKinley sought a judicial declaration that the "corrected deed of trust" recorded by Welch on March 17, 1995, and indicating Bobbie B. Hudson to be the beneficiary thereunder, was "void, and of no consequence or effect." On the other hand, in their respective motions for summary judgment, the Bank and Gunter sought a grant of summary judgment, in toto, thus dismissing this action against them.

¶5. In a thorough 15-page opinion and order Circuit Judge Michael R. Eubanks denied McKinley's motion for partial summary judgment and granted the motions for summary judgment filed by the Bank and Gunter. Likewise, on the same date, Judge Eubanks entered a final judgment consistent with the opinion and order, thus dismissing this action, with prejudice, pursuant to Miss. R. Civ. P. 54(b) and 58.

¶6. We find the trial court's detailed findings of fact to be critical to our disposition of this case; however, so as to not participate in an exercise of lengthy quotation of the trial court's findings of fact, we will summarize these findings which are not redundant to the findings of fact made by the Court of Appeals, as we have already noted through quotation. We begin by noting that while the Court of Appeals found that on July 5, 1996, Welch "canceled the recorded deed of trust in which he was listed as a beneficiary," the trial court found that Welch

---

subsequently entered opinion, found as a fact that "[t]hough also a defendant in the lawsuit, Welch has failed to defend himself and has apparently not given any testimony in this action." Although Welch's name remained in the style of the case in all pleadings filed in the trial court (and before us), the trial court's final judgment dismissed only the Lamar Bank and Gunter, but not Welch. Thus, the trial court wisely entered a Rule 54(b) final judgment. *See* Miss. R. Civ. P. 54(b). However, McKinley's notice of appeal stated that he was appealing to this Court "against the Lamar Bank, James S. Welch, Jr., and George Gunter," even though no final judgment was entered as to Welch. Finally, Welch has made no appearance before the Court of Appeals or this Court during the pendency of this appeal. Accordingly, we find that Welch is not a party to this appeal.

"attempted to cancel" the deed of trust. The trial court also found that (1) McKinley failed to make both the April, 2001 and May, 2001 payments to Welch; (2) on May 9, 2001, after learning of the foreclosure proceedings from his son, McKinley went to Gunter's office wanting to know the amount of money required to "get current on his house" and McKinley was informed by Gunter that the sum was $4,906.42, which included the arrearage, as well as publication costs and attorneys fees; (3) the foreclosure was scheduled to take place on May 18, 2001, but one day before the scheduled foreclosure, McKinley filed for Chapter 13 bankruptcy protection and Gunter, therefore, canceled the foreclosure proceedings so as to not violate the bankruptcy court's automatic stay; and, (4) on May 28, 2001, McKinley dismissed his bankruptcy proceedings, Gunter made no further attempts to foreclose on McKinley's property, and McKinley continued to live in his home while making no further payments pursuant to the promissory note and deed of trust.[2]

¶7.    The trial court also detailed McKinley's version of certain facts. As the trial court stated, McKinley recalled (as noted by his deposition testimony) that his used car dealership had purchased a $4,300 cashier's check from the Lamar Bank, payable to Welch, on April 16, 1999, but that McKinley did not remember purchasing the cashier's check. Also, while McKinley stated the purpose for purchasing the cashier's check was to use as a "cushion" in the event that he missed a payment (evidently claiming that Welch could "draw down" on this cashier's check when McKinley missed a payment), McKinley never discussed this

---

[2]As noted by the trial court and the Court of Appeals, McKinley's house was destroyed by fire in November, 2001.

"arrangement" with Welch. Nor was there any discussion as to how Welch should apply the $4,300, including whether Welch could simply apply the entire amount to the current balance on the note. Notwithstanding all of this, McKinley claimed that he could not be in default since Welch supposedly had available the sum of $4,300 from which to "deduct" any missed monthly payment. McKinley also never revealed this "cushion" to Gunter. McKinley also claimed that he had no further liability under the note and deed of trust after Welch canceled the deed of trust of record on July 5, 1996. McKinley attempted to undergird this assertion by stating that before his wife, Minnie, passed away in 1997, Minnie told McKinley not to worry about the house note, which he interpreted to mean that she had paid off the note. However, McKinley admitted that he was not aware of how Minnie could have generated the money to pay off the promissory note unless it happened to have come from her friend in Memphis, Tennessee, or a brother in Texas. The trial court noted, however, that this purported conversation between Minnie and McKinley occurred in June, 1997, almost a year after Welch had marked the deed of trust as canceled, and that despite Minnie's alleged assurance that the house note "was taken care of," McKinley continued making the monthly payments pursuant to the promissory note until March, 2001.

¶8. McKinley made an alternative claim that Welch's July, 1996 execution of the cancellation stamp on the deed of trust took effect when Welch paid off the first note to the Lamar Bank in 1997, and the 1995 assignment of the original deed of trust terminated. Using McKinley's logic, even if, due to the 1995 assignment of the original deed of trust to the Bank, Welch had no interest in the original deed of trust at the time he stamped it as cancelled in

7

1996, when Welch paid off the debt to the Bank in 1997 and the 1995 deed of trust assignment was terminated, the original deed of trust was again vested in Welch and Welch was thus bound by his 1996 cancellation of the deed of trust. Therefore, according to McKinley, because the deed of trust was cancelled, he owned the house, lien-free, and he was thus not in default on his mortgage. Finally, McKinley asserted that the 1995 "corrected deed of trust" purporting to change the beneficiary from Welch to Hudson, was void; therefore, the original 1990 deed of trust was also void.

## PROCEEDINGS IN THE COURT OF APPEALS

¶9. In his brief, McKinley sets out eleven issues in his Statement of the Issues, but restates these issues by arguing five points: The trial court opinion was based on a mistake of fact; the foreclosure proceedings were commenced on a deed of trust which had been stamped "[p]aid in full, satisfied and cancelled;" even if the deed of trust had been assigned to the Lamar Bank at the time of its cancellation, the cancellation became valid when Welch paid off the promissory note to the Bank; McKinley was not in default on his promissory note to Welch; and, the trial court inappropriately relied upon an affidavit of Deborah Graham, Gunter's secretary, even though Graham was not identified in discovery as a potential witness, and even

8

though Graham's testimony contradicted Gunter's testimony.[3]    The Court of Appeals summarized the issues as:

> (1) [W]hether the altered deed of trust was an original document or a photocopy, (2) whether the loan for the house had been paid off, (3) whether [McKinley] was in default on his house payments in light of a lump sum payment to Welch, and (4) whether the affidavit of Deborah Graham should have been stricken.

2004 WL 1662257, at *1 ¶ 1.

¶10.    The Court of Appeals, in a 5-3 opinion (three judges dissented without a separate written opinion), found no merit in Issues (1), (3), and (4), but found as to Issue (2) that there existed a genuine issue of material fact as to whether the indebtedness which was secured by the deed of trust had been satisfied.    En route to its finding on this issue, the Court of Appeals stated:

> We have not been able to find any case in Mississippi or in any other jurisdiction on all fours with the case before us.    However, we believe that *Emmons v. Lake State Ins. Co.*, 193 Mich. App. 460, 484 N.W.2d 712, 714 (1992) and *Blacketor v. Cartee*, 172 Miss. 889, 161 So. 696 (1935) provide guidance.

---

[3]In her affidavit attached to Gunter's motion for summary judgment, Graham, Gunter's legal secretary, testified, inter alia, that Welch came into the office wanting to foreclose on the property because McKinley was behind in his payments; that the Lamar Bank had sent Welch to Gunter's office to make the foreclosure request; that upon her request for Welch's receipt book, Welch complied with the request by bringing Graham the receipt book several days later, at which time she copied the receipt book and returned the original receipt book to Welch; that she informed Gunter of Welch's office visits; that on April 10, 2001, she went to Lamar Bank, at which time Bank Vice-President Brad Holmes executed an Appointment of Substituted Trustee appointing Gunter as the substitute trustee; that prior to the first newspaper publication of the foreclosure notice, McKinley's son (Mark), who worked in the same building where Gunter's law office was located, came by the law office, at which time Graham informed him that "his father's house was in the process of foreclosure;" that Mark expressed no surprise or emotion upon learning about the foreclosure, but instead stated that "he knew his father was struggling and did not know why his father did not come to he and his brothers for help;" and, that Mark requested and received from her the arrearage amount, and stated to her that he was going to discuss this matter with his brothers to determine if they could assist their father.

9

2004 WL 1662257, at *3, ¶ 13.   In relying on *Emmons* and *Cartee*, the Court of Appeals held:

> Following the reasoning in *Emmons* and *Cartee,* we find that although the assignment was absolute on its face, it gave Lamar Bank only a qualified interest in the McKinleys' property.   Since the assignment was given as collateral security for Welch's loan, the interest conveyed was commensurate with the debt.   Hence, when Welch paid off his loan to Lamar Bank on May 19, 1997, the bank's interest in the secured property ceased as of that moment, and the bank's interest was reinvested in Welch to the same extent as it would have been if an actual reassignment from the bank to Welch had been executed.[4]   The fact that Welch apparently immediately thereafter executed another assignment does not prevent the aforementioned result.

*Id.* at *4, ¶ 21.   In applying the "after-acquired title" doctrine, the Court of Appeals opined that the indebtedness owed by McKinley to Welch had been paid off and satisfied.   *Id.* at *5, ¶¶ 23-24.[5]   The Court of Appeals likewise found an issue of negligence on the part of the Bank and Gunter, which could only be resolved by a jury.   The questionable negligence was the purported failure by the Bank and Gunter to exercise ordinary diligence to discover that there was a recorded cancellation of the deed of trust.   *Id.* at **5-6, ¶¶ 25-28, *7, ¶ 36.

¶11.   The Court of Appeals, therefore, reversed the trial court on this issue and remanded the case to the trial court for a jury trial.   After the Court of Appeals denied the motion for rehearing, Gunter filed a petition for writ of certiorari, which was granted by this Court.

---

[4]There appeared here in the Court of Appeals's opinion footnote 7, which stated:

> This finding is commensurate with Mississippi law regarding the effect of payment of debts subjected to collateral security.   See Mississippi Code Annotated section 89-1-49 (1972) which states that payment of the money secured by a deed of trust "shall extinguish it, and revest the title in the mortgagor as effectually as if reconveyed."

[5]However, in its conclusion, the Court of Appeals found that there existed a jury issue as to whether McKinley's note had been paid in full at the time of the initiation of the foreclosure proceedings.

10

**DISCUSSION**

¶12.     Gunter asserts that the Court of Appeals erred in (1) failing to address whether the purported cancellation of the original deed of trust was ineffective, "as it was a spoliation of that document," thus causing the original deed of trust to still be enforceable and causing the commencement of the foreclosure proceedings to be appropriate; (2) applying the "after-acquired title" doctrine to this case since McKinley had the same capability as Gunter to obtain information and McKinley's statements to Gunter amounted to an admission that he (McKinley) was in default on the promissory note; (3) applying the "after-acquired title" doctrine because McKinley had not paid for any "conveyance of any interest from Welch;" (4) holding that Gunter had failed to exercise ordinary diligence; and, (5) relying on *Emmons* since McKinley's property was never foreclosed on and the loan securing Welch's second assignment to the Bank had not been satisfied.

¶13.     We must remember that this appeal was initially commenced by McKinley because of the grant of summary judgment by the Lamar County Circuit Court.  Thus, while we consider today's case as a result of Gunter's petition for writ of certiorari, such petition is due to the Court of Appeals's finding of error on the part of the trial court in granting summary judgment in favor of Gunter and Lamar Bank.  The issues before us today go directly to the propriety or impropriety on the part of the trial court in granting summary judgment.  To determine whether the Court of Appeals properly reversed the trial court's grant of summary judgment, we visit anew the trial court's actions.  We thus apply a de novo standard of review concerning the propriety of a trial court's grant or denial of summary judgment.  *Montgomery v. Woolbright*,

11

904 So.2d 1027, 1029 (Miss. 2004); ***Brown ex rel. Ford v. J. J. Ferguson Sand & Gravel Co.***, 858 So.2d 129, 130 (Miss. 2003); ***Armistead v. Minor***, 815 So.2d 1189, 1191-92 (Miss. 2002); ***Richardson v. Methodist Hosp.***, 807 So.2d 1244, 1246 (Miss. 2002). We recently discussed our responsibilities in reviewing cases involving summary judgments:

> We apply a de novo standard of review of a trial court's grant or denial of a motion for summary judgment. ***Satchfield v. R. R. Morrison & Son, Inc.***, 872 So.2d 661, 663 (Miss. 2004); ***McMillan v. Rodriguez***, 823 So.2d 1173, 1176-77 (Miss. 2002); ***Lewallen v. Slawson***, 822 So.2d 236, 237-38 (Miss. 2002); ***Jenkins v. Ohio Cas. Ins. Co.***, 794 So.2d 228, 232 (Miss. 2001); ***Aetna Cas., & Sur. Co. v. Berry,*** 669 So.2d 56, 70 (Miss. 1996). Accordingly, just like the trial court, this Court looks at all evidentiary matters in the record, including admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. ***Id.*** at 70. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. ***Id.*** If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. ***Id.*** When a motion for summary judgment is made and supported as provided in Miss. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of the pleadings, but instead the response must set forth specific facts showing that there is a genuine issue for trial. ***Miller v. Meeks***, 762 So.2d 302, 304 (Miss. 2000). If any triable issues of fact exist, the trial court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. ***Id.*** at 304.

***Harrison v. Chandler-Sampson Ins., Inc.***, 891 So.2d 224, 228 (Miss. 2005).

¶14. We first address the Court of Appeals' treatment of the three issues raised by McKinley and in which the Court of Appeals found no merit. McKinley claimed error in the trial court's failure to find that the original 1990 deed of trust from the McKinleys to Welch had been altered. We agree that both the trial court and the Court of Appeals correctly found that the original deed of trust had not been altered. In essence, McKinley argues that when Welch filed his "corrected" deed of trust in 1995, he had in fact altered the original deed of trust and not

12

just a copy of the deed of trust. We again note that the 1995 "corrected" deed of trust reveals that the name "James S. Welch, Jr." is lined through, with the word "Corrected" hand-written above the "line-through." Below the "line-through" is the name "Bobbie B. Hudson" written in long-hand. On this issue, the Court of Appeals found:

> A thorough review of the record reveals that Welch did not alter the original document, but instead altered a photocopy of the original document. Therefore, the original deed of trust remained valid and is thus binding. For the forgoing (sic) reasons, we find this issue is without merit.

*McKinley v. Lamar Bank*, 2004 WL 1662257, at *2, ¶ 11. Our review of the record brings us to the same conclusion as that of the trial court and the Court of Appeals. We also note that there are notations on the "corrected" deed of trust, unrelated to the "corrections," which would not be on the original document. We unhesitatingly conclude that any alterations by Welch were done to a photocopy of the original deed of trust, not to the original document itself. The trial court cited *Holmes v. Ford,* 179 Miss. 673, 176 So. 524 (1937); and, *Upton v. Bush*, 141 Miss. 660, 107 So. 284 (1926). In so doing, the trial court correctly distinguished these cases from the present case. In *Holmes* and *Upton*, the actual original documents were altered by way of erasures of the names of the payees and insertions of the names of different payees/beneficiaries. As the trial court correctly found in today's case, Welch did not alter the 1990 original deed of trust, but instead altered a photocopy of the deed of trust and recorded the copy as a "corrected" deed of trust. Thus, the trial court also quite appropriately found that the original deed of trust remained in full force and effect.

13

¶15. McKinley also claimed error in the trial court's finding that he was in default, notwithstanding the $4,300 lump sum payment he made to Welch by way of a certified cashier's check. Again, we agree with both the trial court and the Court of Appeals in their findings that this lump sum payment did not cause McKinley to avoid being in default. McKinley admitted missing at least three monthly payments in the Spring of 2001, but he asserts that when he missed those monthly payments, Welch should have been required to "draw down" on this $4,300 lump sum payment, by way of crediting McKinley with these payments.[6] Again, as correctly pointed out by the Court of Appeals, the record is totally devoid of any evidence of any such agreement by McKinley and Welch that this $4,300 lump sum payment would be used in this way. In fact, McKinley readily admitted that he and Welch never discussed any such agreement. 2004 WL 1662257, at *6, ¶¶ 29-30. Indeed, the record reveals that at his deposition of June 11, 2002, McKinley was presented with a copy of the $4,300 cashiers check and then testified under oath that (1) he could not remember purchasing the check, though he stated that "undoubtedly I did;" (2) he had no recollection of paying the $4,300 to Welch; (3) he did not remember discussing any arrangement with Welch concerning the $4,300 "and if I say anything different I wouldn't be telling the truth;" (4) he believed Welch used this check to pay on the note; (5) "[w]hat I feel like happened" was that "I made this payment to Welch because Welch "[m]ore than likely come by and asked for it" because "[h]e might have had financial trouble;" and (6) he did not feel that he was behind on his note

---

[6]Even though the record is inconsistent as to the number of payments McKinley missed in the Spring of 2001, in his sworn deposition testimony of June 11, 2002, McKinley admitted that he failed to make the monthly payments in March, April and May of 2001.

14

payments in the Spring of 2001 because the $4,300 "could have been used for payments."[7] Our independent review of the record thus causes us to reach the same conclusion as the Court of Appeals on the issue of McKinley's default on the promissory note.

¶16.    Additionally, McKinley asserted that Deborah Graham's affidavit, which was attached as an exhibit to Gunter's motion for summary judgment, was inappropriately considered by the trial judge in granting summary judgment since Graham had not been revealed in pre-trial discovery as a potential witness, and since her affidavit contradicted Gunter's deposition testimony. *Id.* at *6, ¶ 31.  On this issue, the Court of Appeals stated:

> A review of the trial judge's opinion and order reveals that the judge did not rely solely on Graham's affidavit in reaching a decision on the merits of the case. Further the trial judge found that there had not been a foreclosure, therefore Graham's affidavit was immaterial.

*Id.* at *7, ¶ 33.    Our thorough review of the trial judge's opinion and order causes us to reach the same conclusion as the Court of Appeals – the trial judge obviously relied on the totality of the facts and circumstances laid out in the various pleadings and other documents before him, and he certainly did not rely solely on Graham's affidavit.

¶17.    Accordingly, for these reasons, we find that McKinley's assignments of error relating to  Welch's alteration of the deed of trust, McKinley's default on the house note and deed of trust, and the trial court's treatment of Deborah Graham's affidavit are wholly without merit.

---

[7]McKinley also testified that other than the purchase of Welch's house, he [McKinley] had never had any type of business relationship with Welch.

15

¶18.    Having reached this point, we now focus on the one assignment of error as advanced by McKinley which the Court of Appeals found to have merit. McKinley asserted that Welch's 1996 cancellation of the deed of trust became effective once Welch paid off his first loan to Lamar Bank in 1997.    The Court of Appeals succinctly set out McKinley's claims on this issue:

> McKinley next claims that the debt on the deed of trust was fully satisfied when Welch had the deed of trust stamped "cancelled," and the cancellation became effective when Welch paid off his first loan to Lamar Bank in 1997.  McKinley argues that even if Welch did not have an interest in the deed of trust at the time of the attempted cancellation due to his first assignment to the bank, Welch regained his interest when he paid off the debt.  McKinley maintains that at this point, the assignment terminated, and Welch was bound by his actions in canceling the deed of trust, thus making him [McKinley] the owner of the house, free and clear.

*Id.* at *2, ¶ 12.

¶19.    The Court of Appeals stated:

> McKinley's complaint against Welch, Gunter, and Lamar Bank sought to recover damages for the wrongful initiation of foreclosure proceedings against his property.    His theories for recovery were extortion, conversion, libel and slander, and conspiracy.  He also sought punitive damages. Whether he can recover under either of these theories depends upon whether there was a valid and justified initiation of foreclosure proceedings.  We have determined that a genuine issue of material fact exists as to whether McKinley's note had been paid in full at the time the foreclosure proceedings were initiated.  On remand, McKinley shall bear the burden of proving that the note had in fact been paid in full prior to the initiation of foreclosure proceedings or if the note had not been paid in full, that he was not in default at the time foreclosure proceedings were initiated.
>
> We only hold here that the mere fact that the deed of trust had been assigned to Lamar Bank when the attempted cancellation occurred does not preclude a finding that the indebtedness had in fact been paid in full when the attempted

16

cancellation occurred. Although the cancellation is certainly evidence that the indebtedness had been paid in full, that determination must be made by a jury.

*Id.* at *7, ¶¶ 35-36.

¶20. While Gunter sets out five reasons for us to find that the Court of Appeals erred, we are firmly convinced that this case hinges for the most part on the issue of the effect of Welch's May 23, 1995, assignment of the McKinley deed of trust to the Lamar Bank, which in turn affects the validity of Welch's July 5, 1996, "cancellation" of the 1990 McKinley-to-Welch deed of trust.

The provisions of the 1990 McKinley-to-Welch deed of trust state, inter alia:

All the right (sic), powers, and privileges, of the said Beneficiary [Welch] hereunder shall vest in, inure to and be possessed by the heirs, legal representatives, successors, or assigns, as the case may be, of the said Beneficiary.

The provisions of Welch's May 23, 1995, assignment to the Lamar Bank state:

ASSIGNMENT OF DEED OF TRUST

FOR AND IN CONSIDERATION of the sum of TEN DOLLARS ($10.00), cash in hand paid, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned JAMES S. WELCH, JR., does hereby convey, transfer, set-over and assign with recourse to THE LAMAR BANK, all his or her (sic) right, title and interest in and to that certain promissory note indebtedness and deed of trust securing same executed on May 25, 1990 by Jerald D. McKinley, Sr. and wife, Minnie F. McKinley, to Penny Jones Alexander, Trustee in favor of James S. Welch, Jr., which said deed of trust is recorded in Book 734 at Page 432 and which was re-recorded in Book 877 at Page 106 of the Land Deed of Trust Records of Forrest County, Mississippi.[8]

---

[8]The "re-recorded" deed of trust to which reference is made in this Assignment is the "corrected"deed of trust attempting to change the beneficiary from Welch to Hudson. As already discussed, this attempted change of beneficiary by way of altering and filing a photocopy of the original deed of trust,

The language of this assignment is general and unqualified. We have previously addressed the validity and effect of assignments of deeds of trust. In *EB, Inc. v. Allen*, 722 So.2d 555, 564 (Miss. 1998), we stated:

> "Generally, the intention of the parties ascertained from the entire transaction, including conduct, determines whether the assignment is absolute or intended only as a collateral security." *International Harvester Co. v. Peoples Bank & Trust Co.*, 402 So.2d 856, 861 (Miss. 1981) (quoting 6A C.J.S. Assignments Section 82, page 732). "[A] valid assignment of a debt or contract conveys the entire interest of the assignor to the assignee, and thereafter the assignor has no interest therein." *International Harvester Co.*, 402 So.2d at 861. "As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in the thing assigned, but not to confer upon the assignee any greater right or interest than that possessed by the assignor." *Id.* at 861 (quoting 6A C.J.S. Assignments, Section 73, pages 710-12).

722 So.2d at 564.

¶21. Thus, in today's case, based on the unqualified language of the assignment, once Welch executed the assignment of the deed of trust to Lamar Bank on May 23, 1995, and once this assignment was filed of record, Welch had no further interest whatsoever in the promissory note and deed of trust executed by the McKinleys in his favor on May 25, 1990, and Welch's "cancellation" of the deed of trust on July 5, 1996, was thus invalid and of no effect – Welch possessed nothing on which to act on July 5, 1996.[9] Based on the record, the trial court

did not affect the validity of the original deed of trust. Additionally, it is clear that Hudson, by her actions, desired to convey any interest she had in the "corrected" deed of trust back to Welch prior to his assignment of the original of deed of trust to the Bank.

[9]McKinley asserts, alternatively, that even if Welch's May 23, 1995 assignment to Lamar Bank effectively transferred all of Welch's rights in the deed of trust to the Bank, Welch's 1997 satisfaction of the original promissory note validated his 1996 cancellation of the deed of trust. In support of the position, McKinley relies on the "after-acquired title" doctrine. Without getting into a lengthy discussion of this

18

correctly found that McKinley had not paid off the deed of trust and that McKinley was in default on the note and deed of trust. Even though McKinley claimed that his wife, prior to her death, told McKinley that the house note "was taken care of," the record is devoid of any evidence that the note had been satisfied. As correctly noted by the trial court, even though McKinley interpreted his wife's remarks to mean that the note had been satisfied, and even though this conversation occurred almost a year after Welch marked the deed of trust as "[p]aid in full, [s]atisfied and [c]ancelled," McKinley continued making the monthly payments to Welch pursuant to the promissory note until March, 2001. Actions speak louder than words. McKinley's statements of his belief as to the status of the promissory note as of June, 1997, when his wife purportedly made these comments to him, are belied by the record. Also, McKinley admitted missing three payments in the spring of 2001, because he believed Welch had "slashed" his tires. McKinley's assertions that he believed that, notwithstanding his withholding of payments to Welch, he was not in default on the note because he had paid Welch a $4,300 "cushion" from which to deduct any missed payments are again belied by the record. In fact, McKinley admitted that he and Welch never discussed any such arrangement. Thus, the Court of Appeals erred when it concluded that there were genuine issues of material fact as to "whether McKinley's note had been paid in full at the time the foreclosure proceedings were initiated" and "if the note had not been paid in full, [whether] he was not in default at the time

---

doctrine, we find this doctrine to be wholly inapplicable to today's case. *See Walters v. Merchants & Manufacturers Bank of Ellisville*, 218 Miss. 777, 67 So.2d 714 (1953). *See also Buchanan v. Stinson*, 335 So.2d 912, 913-14 (Miss. 1976); *Crooker v. Hollingsworth,* 210 Miss. 636, 46 So.2d 541 (1950).

19

foreclosure proceedings were initiated." ***McKinley v. Lamar Bank***, 2004 WL 1662257 at *7, ¶ 35.

¶22. Also, the Court of Appeals found that, as to Gunter and the Bank, "[o]rdinary diligence on their part would have revealed a recorded cancellation of the deed of trust, and thus should have led them to inquire as to whether the debt had actually been satisfied." ***Id.*** at *5, ¶ 25. However, the record bears out the fact that Gunter and the Bank were aware of Welch's purported cancellation of the deed of trust, and Gunter, as the attorney and substituted trustee, determined that the "cancellation" carried no adverse legal effect since Welch had previously assigned "all his....right, title, and interest" in the note and deed of trust to the Lamar Bank. In fact, Gunter testified via his deposition that he informed the Bank in his title opinion of the existence of Welch's "cancellation" of the deed of trust and that notwithstanding Welch's actions, the Bank still had a valid deed of trust on which to conduct a foreclosure. Likewise Gunter's review of Welch's receipt book caused Gunter to inform McKinley, upon inquiry, that it would take payment of the sum of $4,906.42 to stop the foreclosure.

¶23. Concerning the 2001 foreclosure, the trial court found, inter alia:

> The Court has found that Welch's assignments in both 1995 and 1997 to Lamar Bank were valid. The Court has found McKinley knew he was in default on his mortgage. As discussed above, McKinley knew he was in default when he failed to make his monthly mortgage payment from March 2001 to May 2001. Since he has affirmatively stated he *did not* tell Welch to use the $4,300.00 payment as a "cushion," should he miss a payment now and then, his argument that such is what he intended all along for Welch to do is of no import. Further McKinley's speculation that Minnie somehow paid the note off in 1996 is wholly unsupported and, in fact, is contradicted by his own testimony that he continued making the monthly mortgage payments from the time shortly before Minnie's passing in 1997 when she made this statement up until February 2001.

20

Therefore, the only remaining question is whether or not the foreclosure was carried out correctly under law.

Gunter, as substituted trustee, had a duty under Mississippi law to conduct the foreclosure sale of the McKinley home in a manner most beneficial to McKinley. *Rawlings v. Anderson,* 149 Miss. 632, 115 So. 714 (1928); *Lake Hillsdale Estates, Inc. v. Galloway*, 473 So.2d 461 (Miss. 1985). Gunter's duties as substituted trustee would be satisfied where the sale is conducted in, "a commercially reasonable manner." *Wansley v. First National Bank*, 566 So.2d 1218, 1221 (1990). Gunter's duties are subject to the power of sale provisions of Miss. Code Ann. § 89-1-55, § 89-1-57 and § 89-1-59. McKinley does not argue that Gunter did not properly conduct foreclosure proceedings under Mississippi law. Instead, McKinley argues that Gunter did not verify that McKinley was in default on his mortgage because Gunter did not speak directly to Welch, but rather had Welch speak with his secretary, Deborah Graham ("Graham").

Gunter instructed Graham to tell Welch to bring proof of McKinley's default to his office, which he did. Graham then went to Lamar Bank and got the bank to sign the Appointment of Substituted Trustee, which was signed and recorded in Forrest County, Book 1138, Page 395, on April 17, 2001. Along with the proper notices Gunter ran in the *Hattiesburg American* newspaper, McKinley has admitted to having actual notice of the foreclosure proceedings and to being informed as to how much money he would have to pay to stop the foreclosure. Instead of paying this arrearage, McKinley ran to bankruptcy court, thus stopping the foreclosure proceedings and insuring that he could continue to reside in the home free of charge. Accordingly, Gunter complied with all his duties as substituted trustee, including those duties to McKinley. There was no wrongful foreclosure because there was never a foreclosure at all.[10]

(Emphasis in original). As correctly noted by the trial court, "*[t]here was no wrongful foreclosure because there was never a foreclosure at all.*" This important fact cannot be over-emphasized. Once McKinley received the stay of the foreclosure proceedings from the

---

[10]Upon making these findings, the trial court addressed McKinley's claims of extortion, conversion, slander and libel, gross negligence or willful misconduct, conspiracy, and punitive damages, found each of these claims to be without merit, and granted summary judgment in favor of the Lamar Bank and Gunter.

bankruptcy court, Gunter forever ceased any further efforts to foreclose on McKinley's house and property. Indeed, eleven days after receiving the stay in bankruptcy court, McKinley requested and received a dismissal of his bankruptcy petition, and continued living "free of charge" in his home until it was destroyed by fire in November, 2001.

¶24. Based on these reasons, we find that the Court of Appeals erred in finding that there existed a genuine issue of material fact as to whether the indebtedness secured by the deed of trust had been paid off at the time of the commencement of the foreclosure proceedings.

**CONCLUSION**

¶25. The trial court meticulously considered the motions for summary judgment, and response in opposition to the motions. This is evident by the trial court's detailed opinion and order which clearly addressed all the issues by reviewing the pleadings, discovery documents, affidavits, and all other documents submitted in support of, and in opposition to, the motions for summary judgment, and which correctly applied the law. The Court of Appeals correctly decided all the issues before it, except one. For the reasons stated, the Court of Appeals erred in finding that there existed genuine issues of material fact as to whether McKinley's promissory note had been paid in full at the time the foreclosure proceedings were initiated, or alternatively, that if the note had not been paid in full, whether McKinley was in default at the time foreclosure proceedings were initiated. In this vein, the Court of Appeals also erred in finding that there was a question of whether there was negligence on the part of Gunter since there was a recorded cancellation of the deed of trust by Welch.

¶26. Accordingly, as to George Gunter, we reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Lamar County Circuit Court.

¶27. AS TO GEORGE GUNTER, THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.

SMITH, C.J., WALLER, P.J., DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. COBB, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.