BLACKETOR *et al. v.* CARTEE.

(Division B. May 20, 1935.)

[161 So. 696. No. 31742.]

8903

**F. M. Morris,** of Hattiesburg, for appellants.

Homer Currie, of Raleigh, for appellee.

894

Argued orally by **F. M. Morris**, for appellant.

**Ethridge, P. J.,** delivered the opinion of the court.

T. A. Cartee, appellee, filed his bill in the chancery court of Smith county against Elizabeth S. Blacketor, a nonresident, for the purpose of confirming his title to certain lands described in the bill. It was alleged in the bill that the complainant and defendant claimed from a common source of title, to-wit, A. J. Davis, and that on the 27th day of October, 1928, said A. J. Davis conveyed said land to J. W. Kersh, taking a deed of trust for two thousand five hundred dollars thereon, with Homer Currie as trustee. The deed was filed for record on January 22, 1932, and the deed of trust on October 29, 1928, and the bill alleges that on March 5, 1929, A. J. Davis transferred and assigned to T. A. Cartee an interest in the deed of trust to the extent of eight hundred thirty-four dollars and eighty-three cents, which assignment was duly recorded; that the note secured by the deed of trust was not paid, and the trustee, Homer Currie, upon the request of Cartee, after a foreclosure, executed a trustee's deed to Cartee.

It was further alleged that on the 31st day of December, 1931, the said A. J. Davis executed and delivered to Elizabeth S. Blacketor a warranty deed attempting to convey said land. It was further alleged that A. J. Davis had no title at this time, and the bill prayed for the confirmation of the title conveyed to T. A. Cartee, and for the cancellation of the deed to Elizabeth S. Blacketor. There was exhibited to the bill, as finally amended, a notice of the trustee's sale, proof of publication of the notice, deed from Davis to Kersh, deed of trust from

Kersh to Davis, and the assignment, to the extent of eight hundred thirty-four dollars and eighty-three cents, of the deed of trust to T. A. Cartee.

A. J. Davis appeared, without having been made a defendant, and sought to answer the bill, and on objection thereto made application to be admitted as a defendant, which was granted. Elizabeth S. Blacketor appeared and answered, which answer was made a cross-bill.

The answer and cross-bill denied that Cartee was in possession of the land involved, and asserted that the land was held by tenants of defendant and Davis; admitted that A. J. Davis sold said land to J. W. Kersh by warranty deed, and that Kersh executed a trust deed for two thousand five hundred dollars, to secure the purchase price. It further alleged that Kersh never recorded his deed, and, being unable to meet the payments, returned the warranty deed to A. J. Davis, and relinquished verbally all right, title, and interest in and to said property. However, the bill and answer alleged that A. J. Davis had assigned, to the extent of eight hundred thirty-four dollars and eighty-three cents, the deed of trust then duly of record to T. A. Cartee to secure an indebtedness due by Davis to Cartee, with an agreement that, when said eight hundred thirty-four dollars and eighty-three cents was paid, the said T. A. Cartee would reassign said deed of trust to A. J. Davis. It was further alleged that the debt of eight hundred thirty-four dollars and eighty-three cents due by Davis to Cartee had been fully paid, and that Cartee had failed and refused to return the deed of trust to Davis. It was further alleged that, after Kersh relinquished his right in said property and returned the deed executed to him, the appellant, A. J. Davis, acting in good faith with his assignee, Cartee, delivered to him the unrecorded deed made to Kersh, to be held by Cartee until the payment of the indebtedness

due him by Davis. It was further alleged that A. J. Davis was indebted to Elizabeth S. Blacketor in the sum of six hundred dollars, and that he conveyed to her his interest in said land to secure this debt, but that it was understood and agreed between them that, upon the payment of said six hundred dollars, she would reconvey said land to him, and that the said A. J. Davis continued thereafter, and is now, in possession thereof by his tenant. It was further alleged that the indebtedness of eight hundred thirty-four dollars and eighty-three cents due by Davis to Cartee, for which the Kersh deed of trust had been assigned, had been paid in full prior to the time of the attempted foreclosure, and that A. J. Davis had a receipt in full therefor, which was attached to the answer and cross-bill, prior to the time when Cartee undertook to have said trustee's deed executed. The amended answer and cross-bill set up payments in the following amounts:

1929

| | |
|---|---|
| October 1st check paid to T. A. Cartee | $190.00 |
| December 23, two yearlings | 75.00 |
| December 23, two ducks | 2.00 |
| Paid for oil for Buckhalter | 7.50 |
| Feb. 10, 1930, one drum of gas | 9.07 |
| Oct. 18, 1930, paid cash | 100.00 |
| Dec. 10, 1930, 65 gallons of gas | 7.80 |
| Dec. 10, 1930, 6½ gallons of oil | 3.25 |
| Dec. 10, 1930, cash paid T. A. Cartee | 15.00 |
| March 31, 1931, paid to J. S. Garraway for account of T. A. Cartee at his request | 133.38 |
| March 31, 1931, paid to J. E. Davis for T. A. Cartee at his request | 30.00 |
| Amount shown by receipt Exhibit "A" | 530.00 |
| Total | $1103.00 |

T. A. Cartee demurred to the cross-bill as amended

on the following grounds: (1) That it shows on its face that A. J. Davis has no legal or equitable title to the land involved in this suit, having conveyed the title to Kersh; (2) that said cross-bill shows that Elizabeth S. Blacketor has no title to any part of said land, her only source of title being from A. J. Davis at a time when he had no title; (3) because it is shown by Exhibit A attached to the cross-bill that the receipt given by Cartee to Davis was in payment for the personal property described in the deed of trust, and was not in payment of the deed of trust on the land; and (4) because it was shown that T. A. Cartee has both the legal and equitable title to the said land.

The quitclaim deed from Kersh to Cartee made an exhibit to his bill shows that it was acquired after the original suit was filed, and was for a nominal consideration.

It seems to be the theory of Cartee and the court below that the receipt controls the allegations of the cross-bill. If this is the theory, it is manifestly wrong, because the relief is not sought on the instrument, and the receipt was merely made an exhibit for the purpose of showing payment, and a receipt, unless contractual in its nature, is subject to variation by parol proof.

It will be seen from the statement of this case that Davis made a deed to Kersh to the lands involved, taking the deed of trust mentioned as security for the purchase price, and this was assigned thereafter to Cartee; that Kersh desired to rescind the transaction, and, accordingly, surrendered his deed to Davis, and verbally relinquished his right and title thereunder. This deed was then delivered to Cartee along with the deed of trust, and Cartee had knowledge, if the allegations of the cross-bill and answer are true, of the fact that Kersh had surrendered his claim verbally and redelivered the deed to the grantor.

While it is true that lands can only be conveyed by instruments in writing, and that redelivery of a deed executed does not operate as a reconveyance, yet, when an agreement is made that it will be surrendered in satisfaction of a debt for the purchase money of the property conveyed in the deed, the original grantor has an equity in the land embraced in the deed which will be enforceable as against persons having notice of such equity.

Under the facts set forth in the answer and cross-bill, Davis had the right to go into a court of equity and set up the transactions and either have the deed of trust foreclosed by a sale under its terms or by having the chancery court to direct a reconveyance so as to transfer title back to the original grantor.

Cartee, having notice of this equity, is bound by it.

It is alleged in the answer and cross-bill that the debt to Cartee was paid, and, by virtue of section 2152, Code 1930, this payment extinguished the debt of Davis to Cartee, and revested in Davis the equitable title to the land.

In 41 C. J., p. 811, par. 960, it is said: "Where a mortgage is executed as collateral security for the debt of a third person, the property stands in the position of a surety of the debtor, and any change in the contract of suretyship which would discharge a surety will release and discharge the property held as collateral."

In 11 C. J., p. 667, par. 419, it is said: "The assignment of the mortgage before maturity, by delivery and indorsement of the mortgage and note as collateral security for a loan not yet due, vests in the assignee only the equitable title."

In 5 C. J., p. 958, par. 143, it is said: "Where the debt for which the collateral is given is paid, the right to hold the collateral ceases, and after that time the assignee has no interest in the collateral that he can transfer to another"—citing authorities.

It is clear, therefore, that, if the statements in the answer and cross-bill are true, Cartee had no right to have the lands sold under the deed of trust.

As to the right of Elizabeth S. Blacketor in these lands, if the statements in the answer and cross-bill are true, the conveyance to her was to secure a debt, and amounted merely to a mortgage on the property. Palmer v. Chandler, 158 Miss. 604, 131 So. 104; Freeman v. Wilson, 51 Miss. 329, in which case Judge Simrall, speaking for the court, said: "It is now well settled doctrine in courts of equity, that they will examine into the true character of a conveyance, which, on its face, imports an absolute title, and will give it effect, as contemplated by the parties, to be ascertained by their contemporaneous and subsequent conduct. If they are dealing with respect to a loan, and the deed was intended as a security for the debt, parol evidence may be received to explain the true character, and limit the absolute deed into a mere security for the money, so that when the debt is paid the debtor will be entitled to a reconveyance of the estate."

See, also, Anding v. Davis, 38 Miss. 574, 77 Am. Dec. 658; Barkwell v. Swan, 69 Miss. 907, 13 So. 809; Mason v. Moody, 26 Miss. 184.

It is true that section 3351, Code 1930, provides a limitation upon the right to introduce parol evidence where the grantee has gone into possession. Just who was in possession of the land involved in the case at bar is a disputed issue of facts.

Upon the allegations of the cross-bill, we think that both Davis and Elizabeth S. Blacketor had enforceable equities, and, if said allegations are found to be true in fact, are entitled to a cancellation of the trust deed, and to a redelivery of the deed of trust, or to a foreclosure of the trust deed in their favor, or a decee conveying to Davis the land in the deed executed by Kersh as of the date of delivery of the deed by him to Davis.

Furthermore, it appears that the deed of trust given by Kersh for the purchase money was for two thousand five hundred dollars, and that there were one hundred fifty acres of land, and that the debt due to Cartee was eight hundred thirty-four dollars and eighty-three cents, and that the amount paid at the trustee's sale was only one hundred dollars, which amount is entirely out of proportion, apparently, to the real value of the property, being such as to shock the conscience; and, if so, under the original bill no relief should be granted.

We are therefore of the opinion that the court below was in error in sustaining the demurrer and in granting the relief prayed for upon the facts in this record, and the judgment of the court below will be reversed, the demurrer overruled, and the cause remanded for further proceedings therein.

Revesed and remanded.