IRVING, J.,
for the Court.
¶ 1. Jerald McKinley filed a complaint in the Lamar County Circuit Court seeking damages from Lamar Bank, James Welch, Jr., and George Gunter for actions related to an attempted foreclosure of his home. Shortly thereafter, McKinley filed a motion for partial summary judgment, and both Lamar Bank and Gunter filed individual motions for summary judgment. The trial judge denied McKinley’s motion and granted Lamar Bank’s and Gunter’s motions. Aggrieved by the judge’s decision, McKinley now appeals and assigns as error the following issues: (1) whether the altered deed of trust was an original document or a photocopy, (2) whether the loan for the house had been paid off, (3) whether he was in default on his house payments in light of a lump sum payment to Welch, and (4) whether the affidavit of Deborah Graham should have been stricken.
¶ 2. We find that the grant of summary judgment was improper; therefore, we reverse and remand for a trial on the merits.
FACTS
¶ 3. Jerald and Minnie McKinley purchased a home from James S. Welch, Jr. on May 25, 1990.[1] The McKinleys executed a deed of trust and promissory note to Welch to secure financing of the home. The deed of trust secured a $50,000 indebtedness and provided for monthly payments in the amount of $482.40. It was recorded in the Forrest County Chancery Clerk’s office on May 29,1990.
¶ 4. On March 17, 1995, Welch recorded a photocopy of the original recorded deed of trust. The photocopy was denoted as a “Corrected Deed of Trust,” in which a Bobbie B. Hudson replaced Welch as the beneficiary.[2] On May 23, 1995, Hudson reassigned all of her interest in the deed of trust back to Welch. Additionally, on that same day, Welch assigned all of his interest in the deed of trust to Lamar Bank as collateral for a loan financed by the bank. Both of these assignments were filed in the clerk’s office on June 6, 1995. It is noteworthy that the note from the McKin-leys to Welch was assigned to Lamar *691 Bank, but the bank never notified the McKinleys of the assignment. Apparently, the McKinleys continued making payments to Welch, with no payments ever being made to Lamar Bank. Further, the bank did not send the notice of foreclosure to the McKinleys.
¶5. Gunter testified by deposition that he never talked with Welch prior to initiating foreclosure proceedings. He took Lamar Bank’s word that the McKinleys were in default on their promissory note to Welch. Lamar Bank said that Welch told it that the McKinleys were in default.
¶ 6. On July 5, 1996, Welch canceled the recorded deed of trust in which he was listed as the beneficiary.[3] On May 19, 1997, he paid off the loan financed by Lamar Bank and, on the same day, assigned to the bank for a second time all of his interest in the McKinley deed of trust. This second assignment was security for a new loan. This assignment was filed on June 23,1997.
¶ 7. In March 2001, McKinley defaulted on his promissory note to Welch.[4] As a result, Lamar Bank appointed George Gunter as substitute trustee of the deed of trust and authorized Gunter to initiate foreclosure proceedings on McKinley’s property. Apparently, McKinley was not notified of the impending foreclosure proceedings, for according to McKinley, he learned of the foreclosure proceedings from his son who had seen the published notice in the local newspaper.
¶ 8. McKinley filed a Chapter 13 bankruptcy to interrupt the foreclosure proceedings. In response to the bankruptcy filing, Gunter terminated the foreclosure proceedings and took no further action in this regard. McKinley continued to live in the house without making any further payments until the house was destroyed by a fire in November 2001.
ANALYSIS AND DISCUSSION OF THE ISSUES

Standard of Review

¶ 9. The law is well established with respect to the grant or denial of summary judgment. Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P 56(c). “All that is required of an opposing party to survive a motion for summary judgment is to establish a genuine issue of material fact by the means available under the rule.” Lowery v. Guar. Bank and Trust Co., 592 So.2d 79, 81 (Miss.1991). “In determining whether the entry of summary judgment [is] appropriate, [the appellate court] reviews the judgment de novo, making its own determination on the motion, separate and apart from that of the trial court.” Id. “The evidentiary matters are viewed in the light most favorable to the nonmoving party.” Id. “If after this examination, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, then summary judgment is affirmed, but if after examining the eviden-tiary matters there is a genuine issue of material fact, the grant of summary judgment is reversed.” Id.

(1) Alteration of the Deed of Trust

*692 ¶ 10. McKinley first argues that the trial judge erred in finding that the original deed of trust had not been altered. He also contends that Welch’s execution- of the “corrected” deed of trust by changing the beneficiary to Hudson constituted an unauthorized alteration, thus making the instrument void and of no effect.
¶ 11. McKinley maintains that Welch altered the original deed of trust and not a copy, and then re-recorded the altered instrument without his knowledge or consent. The trial judge, however, found that Welch did not alter the original, but instead re-recorded a separate, “corrected” deed of trust, thus making the “corrected” deed of trust of no legal significance and void. We agree with the trial judge. A thorough review of the record reveals that Welch did not alter the original document, but instead altered a photocopy of the original document. Therefore, the original deed of trust remained valid and is thus binding. For the forgoing reasons, we find this issue is without merit.

(2) Whether the Loan on the House Had Been Paid Off

¶ 12. McKinley next claims that the debt on the deed of trust was fully satisfied when Welch had the deed of trust stamped “cancelled,” and the cancellation became effective when Welch paid off his first loan to Lamar Bank in 1997. McKinley argues that even if Welch did not have an interest in the deed of trust at the time of the attempted cancellation due to his first assignment to the bank, Welch regained his interest when he paid off the debt. McKinley maintains that at this point, the assignment terminated, and Welch was bound by his actions in canceling the deed of trust, thus making him [McKinley] the owner of the house, free and clear.
¶ 13. We have not been able to find any case in Mississippi or in any other jurisdiction on all fours with the case before us. However, we believe that Emmons v. Lake State Ins. Co., 193 Mich.App. 460, 484 N.W.2d 712, 714 (1992) and Blacketor v. Cartee, 172 Miss. 889, 161 So. 696 (1935) provide some guidance.
¶ 14. In Emmons, the plaintiffs home was partially destroyed by fire. Plaintiff and the company that insured the home were- unable to agree on the value of the loss. Emmons, 484 N.W.2d at 713. Therefore, several months passed before the insurance payment was made. In the meantime, the mortgage on the home went into default, and the bank foreclosed on the property prior to the insurance payment being made. Id. At the foreclosure sale, the bank bid the full amount of the outstanding principal and accrued interest. Id.
¶ 15. The bank contended it was entitled to the insurance proceeds not on the basis of its mortgagee status, but by virtue of the following assignment clause contained in the policy of insurance:
If under paragraph 19 the Property is acquired by Lender, Borrower’s right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.
Emmons, 484 N.W.2d at 714.
¶ 16. The plaintiff argued that the bank lost its claim to the insurance proceeds once it foreclosed on the mortgage. In finding for the plaintiff, the Michigan appellate court said this:
This clause created an equitable assignment of a future right. In equity, a present assignment of money having a potential existence but not yet due will operate on the fund as soon as it is acquired. Here, the bank’s interest in *693 the insurance proceeds vested at the time of the fire but expired upon satisfaction of the debt at the foreclosure sale.
The assignment was collateral security for the mortgage debt. An assignment made as collateral security for a debt gives the assignee only a qualified interest in the assigned chose, commensurate with the debt or liability secured. This is true even though the assignment is absolute on its face. After the debt secured has been paid, the right to hold the assigned collateral ceases, and the assignee has no interest in the collateral.
We find that, although the assignment survived the foreclosure, the debt did not. The assignment, therefore, secured nothing.
Id. (emphasis added) (citations omitted).
¶ 17. In Cartee, T.A. Cartee filed a bill seeking to confirm title to certain lands that he had received as a result of the foreclosure of a deed of trust which had been assigned to him. Cartee, 172 Miss. 889, 161 So. 696 at 697. The initial defendant in the action was Elizabeth S. Blacketor who was given a deed of conveyance by A.J. Davis to the same lands identified in Cartee’s bill.[5] Id. Davis, the original beneficiary of the deed of trust, was later added as a defendant and allowed to answer Cartee’s bill. Blacketor filed an answer which was made a cross-bill. Id.
¶ 18. Cartee demurred to the answer and cross-bill, and the trial court sustained the demurrer and granted the requested relief. Cartee, 172 Miss. 889, 161 So. 696 at 698-99. Since the case was decided in the trial court on the pleadings alone, the facts, which are recited below, were noted as being taken from the trial pleadings.
¶ 19. Davis sold 150 acres of land to J.W. Kersh via warranty deed. Id. at 699. To finance the purchase price, Kersh executed a deed of trust in the amount of $2,500 in favor of Davis as beneficiary. Id. at 697. Davis filed the deed of trust on October 29, 1928, but Kersh never recorded the warranty deed.[6] Id. Kersh was unable to pay the indebtedness and surrendered the unrecorded warranty deed to Davis in satisfaction of his debt to Davis. Id. Davis assigned to Cartee, to the extent of $834.83, the recorded deed of trust from Kersh to Davis to secure an indebtedness due by Davis to Cartee. Id. Also, Davis tendered to Cartee the unrecorded warranty deed made to Kersh, with the understanding that Cartee would hold the deed until payment of the indebtedness due him by Davis. Id. at 697-98. Further, the assignment was accompanied by an agreement that when the $834.83 was paid, Car-tee would reassign the deed of trust to Davis. Id. at 697. It was alleged in the answer and cross-bill that Davis paid Car-tee the $834.83 prior to the foreclosure. Id. at 698. Cartee did not return the warranty deed and foreclosed on the deed of trust which had been assigned to him.
¶ 20. On appeal, the Mississippi Supreme Court held that if the statements in the answer and cross-bill were true, Car-tee had no right to have the lands sold under the deed of trust. Id. at 699. In reaching its conclusion, the court observed that it was alleged in the answer and cross-bill that the debt to Cartee had been paid. Following this observation, the *694 court, quoting sections from Corpus Juris Secundum, stated:
Where a mortgage is executed as collateral security for the debt of a third person, the property stands in position of a surety of the debtor, and any change in the contract of suretyship which would discharge a surety will release and discharge the property held as collateral.
The assignment of the mortgage before maturity, by delivery, and indorsement of the mortgage and note as collateral security for a loan not yet due, vests in the assignee only the equitable title.

Where the debt for which the collateral is given is paid, the right to hold the collateral ceases, and after that time the assignee has no interest in the collateral that he can transferred to another.

Cartee, 172 Miss. 889, 161 So. 696 at 698-99 (emphasis added).
¶ 21. Following the reasoning in Emmons and Cartee, we find that although the assignment was absolute on its face, it gave Lamar Bank only a qualified interest in the McKinleys’ property. Since the assignment was given as collateral security for Welch’s loan, the interest conveyed was commensurate with the debt. Hence, when Welch paid off his loan to Lamar Bank on May 19, 1997, the bank’s interest in the secured property ceased as of that moment, and the bank’s interest was reinvested in Welch to the same extent as it would have been if an actual reassignment from the bank to Welch had been executed.[7] The fact that Welch apparently immediately thereafter executed another assignment does not prevent the aforementioned result.
¶ 22. Even though we have found that the -assignment to Lamar Bank was only a qualified assignment, our inquiry does not end here. Whether summary judgment was properly granted to Lamar Bank depends upon an assessment of the legal effect of the extinguishment of Welch’s debt to Lamar Bank on his prior cancellation of the deed of trust from the McKin-leys at a time when he held no interest in the deed of trust because of his prior assignment to Lamar Bank. Stated differently, the question is whether Welch’s pri- or cancellation of his security interest in the McKinleys’ property became effective immediately upon his reacquisition of full ownership of the security interest. A corollary question is whether Lamar Bank, which did not own the note secured by the deed of trust, had a right to foreclose on the deed of trust notwithstanding the effect of Welch’s payoff of his note to Lamar Bank on his prior attempt to cancel the deed of trust.
¶ 23. Again, we have not been able to find any case speaking directly to this issue. However, it is clear that if Welch, for a valuable consideration, had conveyed an interest in land at a time when he did not possess the interest conveyed but later acquired the interest, title would pass to the grantee at the time of the subsequent acquisition, for “a warranty in a deed or deed of trust carries with it an after-acquired title later obtained by the grantor or mortgagor.” Walters v. Merck. & Mfgs. Bank of Ellisville, 218 Miss. 777, 782, 67 So.2d 714, 716 (1953).
¶24. We see no reason why Welch should not be held to his verified certification that the deed of trust had been paid in full, satisfied and cancelled. Since all of *695 the payments were apparently made to Welch, surely he would know whether the indebtedness had been paid at the time he attested that it had been paid. There is no reason why Lamar Bank’s qualified interest in the deed of trust, at the time of Welch’s attestation, should impact the verity of Welch’s assertion or why he should not now be bound by his public attestation that the deed of trust had been paid in full. In other words, we fail to discern any reason why Welch’s lack of full ownership interest in the deed of trust, from a temporal standpoint, at the time of his public attestation regarding the status of the debt should operate as an impediment to his being bound by the consequences of his pronouncement that the indebtedness secured by the deed of trust had been paid.
¶ 25. Lamar Bank and Gunter stand on a different footing. Ordinary diligence on their part would have revealed a recorded cancellation of the deed of trust, and thus should have led them to inquire as to whether the debt had actually been satisfied. “A [party should] examine [the] previously recorded deed of his grantor [for things that may affect its title], and if [in it] there is a recital sufficient to put a reasonably prudent man on inquiry as to sufficiency of title, he is charged with notice of these facts which could and would be disclosed by a diligent and careful investigation.” Eagle Lumber & Supply Co. v. De Weese, 163 Miss. 602, 622, 135 So. 490, 494 (Miss.1931). Thus, the “failure [of a party] to investigate the state of [a] title is negligence on his part, and equity will not relieve one who is perfectly acquainted with his rights, or has the means of becoming so, by examining the land records or otherwise.” Buchanan v. Stinson, 335 So.2d 912, 914 (Miss.1976).
¶ 26. Whether the note had in fact been paid is irrelevant so far as the question of the bank’s and Gunter’s negligence as long as the public records indicated that the deed of trust had been satisfied. Moreover, since the bank allowed Welch to continue to receive payments on the note from the McKinleys after the note had been assigned, a plausible argument can be made that Welch was acting as the bank’s agent and that the bank should be bound by his actions.
¶27. The one person who knows for sure whether the McKinleys’ note had been paid in full, James Welch, Jr., never appeared and defended in the court below, nor has he appeared in this appeal. Consequently, the only evidence in this record to suggest that Welch’s attestation upon the public records of Forrest County that the indebtedness secured by the deed of trust had been “paid in full, satisfied and cancelled” is not true is the hearsay testimony of Stephen Bradley Holmes, Lamar Bank’s employee.
¶ 28. Based on the state of the record before us, we find that a genuine issue of material fact exists as to whether the indebtedness secured by the deed of trust had been paid off.

(3) Default on House Note

¶ 29. McKinley next argues that although he did not make the required March and April payments, he was not in default on the deed of trust because he made a lump sum payment to Welch to be used as a cushion in case he failed to make future payments. This lump sum payment was allegedly made through McKinley’s used car dealership. McKinley says his used car dealership purchased a cashier’s check from Lamar Bank payable to Welch in the amount of $4,300. He contends that he considered this to be an advance payment on his note secured by the deed of trust, even though he and Welch never discussed the manner in which the money would be used.
*696 ¶ 30. We find this issue to be without merit. Even if the $4,300 was intended as advance payments, no agreement to that effect was reached between McKinley and Welch. As stated, McKinley even admitted that no such discussion to this effect took place with Welch. Welch was not bound by McKinley’s intention as to how the lump sum payment would be applied since no agreement was reached as to whether the payment would be applied against the principal or the accruing installment payments. However, since wé have already determined in issue two that this case should be remanded, we need not discuss this issue any further.

(k) Deborah Graham’s Affidavit

¶31. McKinley finally contends that the trial judge erroneously relied upon the affidavit of Gunter’s secretary, Deborah Graham, even though she had not been disclosed during discovery. McKinley further argues that Graham’s testimony directly contradicted Gunter’s testimony, and since Graham was not listed as a possible witness during discovery, Gunter should not have been allowed to use her affidavit in support of his motion for sum-, mary judgment.
¶32. In her affidavit, Graham stated that Welch came into her office and requested that McKinley’s house be foreclosed upon because McKinley had not paid him in several months. Graham also stated that Welch brought her a copy of his receipt book as proof of McKinley’s delinquency, and thereafter, she went to Lamar Bank and got the bank to sign the “Appointment of Substituted Trustee.”
¶ 33. A review of the trial judge’s opinion and order reveals that the judge did not rely solely on Graham’s affidavit in reaching a decision on the merits of the case. Further, the trial judge found that there had not been a foreclosure, therefore Graham’s affidavit was immaterial.
¶ 34. Again, because we have already determined that this case must be reversed and remanded, we see no need to discuss this issue any further.
CONCLUSION
¶ 35. McKinley’s complaint against Welch, Gunter, and Lamar Bank sought to recover damages for the wrongful initiation of foreclosure proceedings against his property. His theories for recovery were extortion, conversion, libel and slander, and conspiracy. He also sought punitive damages. Whether he can recover under either of these theories depends upon whether there was a valid and justified initiation of foreclosure proceedings. We have determined that a genuine issue of material fact exists as to whether McKinley’s note had been paid in full at the time the foreclosure proceedings were initiated. On remand, McKinley shall bear the burden of proving that the note had in fact been paid in full prior to the initiation of foreclosure proceedings or if the note had not been paid in full, that he was not in default at the time foreclosure proceedings were initiated.
¶ 36. We only hold here that the mere fact that the deed of trust had been assigned to Lamar Bank when the attempted cancellation occurred does not preclude a finding that the indebtedness had in fact been paid in full when the attempted cancellation occurred. Although the cancellation is certainly evidence that the indebtedness had been paid in full, that determination must be made by a jury.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
*697 KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., AND LEE J., CONCUR. MYERS, CHANDLER AND GRIFFIS, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.

. Minnie died prior to the institution of the litigation which led to this appeal.

. A line was drawn through Welch's name, the word "corrected” written above Welch’s crossed-through name, and the name Bobbie B. Hudson was written in as the new beneficiary.

. The deed of trust was stamped "paid in full, satisfied and cancelled” and signed by Welch as beneficiary. Welch's signature was attested by a deputy chancery clerk.

. McKinley claims that he withheld his monthly payment to Welch because he believed that Welch had slashed his tires.

. Davis owed Blacketor $600, and the conveyance to her was pursuant to an understanding and agreement that when he repaid the $600, she would reconvey the land to Davis. Davis remained in possession of the land.

. The warranty deed was ultimately filed on January 22, 1932, presumably by Cartee.

. This finding is commensurate with Mississippi law regarding the effect of payment of debts subjected to collateral security. See Mississippi Code Annotated section 89-1-49 (1972) which states that payment of the money secured by a deed of trust "shall extinguish it, and revest the title in the mortgagor as effectually as if reconveyed.”